# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TERRY K. MULLINS, II, | ) | CASE NO. 5:20-CV-01282 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAZAKI, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Terry K. Mullins, II (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security[1] (Commissioner), denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties. (R. 9). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

## I.    Procedural History

On January 3, 2017, Plaintiff filed his applications for DIB and SSI, alleging a disability onset date of April 2, 2016. (R. 12, Transcript ("Tr.") 235-248). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

Law Judge ("ALJ"). (Tr. 72-191). Plaintiff participated in the hearing on January 17, 2019, was represented by counsel, and testified. (Tr. 32-71). A vocational expert ("VE") also participated and testified. *Id*. On February 12, 2019, the ALJ found Plaintiff not disabled. (Tr. 25). On April 13, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13, 15 & 16).

Plaintiff asserts the following assignments of error: (1) "[t]he [ALJ] failed to provide good reasons for the weight he gave to the opinion of the treating physician, thus flawing his finding of residual functional capacity," and (2) "[t]he [ALJ] failed to substantively address Mr. Mullin's illiteracy." (R. 13).

## II.     Evidence

### A.      Relevant Medical Evidence[2]

#### 1.      Treatment Records

On March 24, 2016, Plaintiff began treatment with primary care provider Lisa Malys, D.O. (Tr. 976). He reported doing a lot of heavy lifting at work, and complained of lower back pain as well as his left leg "going out" on him. *Id*. He reported a pain level of 7.5 out of 10, which was aggravated by walking, lifting, and bending. *Id*. On review of symptoms, Plaintiff denied neurologic weakness, depression, and anxiety. *Id*. Plaintiff had a Body Mass Index (BMI) of 48.66. (Tr. 978). On examination, Plaintiff was obese, looked older than his stated age, had an

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. Plaintiff's mental impairments are not germane to this decision, and have been intentionally omitted.

antalgic gait, decreased range of motion (ROM) of the lumbar spine due to pain, unsteady gait, tenderness to palpation (TTP) of the lumbar paraspinal muscles, and normal ROM of the hips bilaterally. (Tr. 978). He had normal pulses in all four extremities, and trace pedal edema on the left and right. *Id*. Neurologically, Plaintiff had weakness of the left leg, "decreased sensation lateral left leg," positive straight leg raise (SLR) on the left, and his reflexes were difficult to assess. (Tr. 979).

The same date, Dr. Malys ordered an x-ray of Plaintiff's lumbar spine, which revealed multilevel endplate spondylosis, multilevel degenerative disc disease with multilevel disc space narrowing, and no lordosis, scoliosis, misalignment, or fracture. (Tr. 813-814).

On April 5, 2016, physical therapist Angela Stone noted Plaintiff has "positive SLR on the L[eft]." (Tr. 756).

On April 6, 2016, an MRI of the lumbar spine revealed multilevel degenerative disc disease, degenerative arthropathy with acquired canal stenosis, neural foraminal narrowing, and potential nerve impingement. (Tr. 811-812). Annular disc bulge and osteophyte complex were noted at multiple levels. *Id*.

On May 22, 2016 and October 19, 2016, TTP of the lumbar paraspinal muscles was noted on examination by Dr. Malys and Dr. Stutzman respectively. (Tr. 962, 944).

On June 2, 2016, Dr. Stutzman's physical examination yielded a positive SLR on the left. (Tr. 950). He diagnosed degenerative disc disease of the lumbar spine with myelopathy, and increased Plaintiff's Gabapentin given his persistent neuropathic symptoms and also included a slight increase in Plaintiff's prescription for Oxycodone. *Id*.

On December 20, 2016, Dr. Latorte noted Plaintiff had 5/5 flexion and extension in the lower extremities and a negative SLR test bilaterally. (Tr. 835). Patellar reflexes were 2/4 on

3

the right and left. *Id*.

The record contains the following descriptions of Plaintiff's gait from various medical

sources:

| Date | Description of Gait | Source | Tr. |
|------|--------------------|--------|-----|
| 3/22/16 | "able to ambulate, but this seemed to set off pain in left low back and hip" | Jesse Gurm, M.D. | 400 |
| 4/5/16 | "Ambulates dragging L LE with a knee brace on, He walks with L foot ER and forefoot abduction." | Angela Stoner, MPT | 756 |
| 4/26/16 | "Was demonstrating what his job consisted of after the rx session and his L leg gave out …L Leg also gave out with sit to stand at EOS" | Ms. Stoner, MPT | 777 |
| 5/22/16 | "antalgic gait, decreased ROM of lumbar spine due to pain, unsteady gait" | Lisa Malys, M.D. | 962 |
| 6/2/16 | "he has difficulty with toe raise bilaterally … gait mildly antalgic" | Mark Stutzman, D.O. | 950 |
| 7/7/16 | "antalgic gait … unsteady gait" | Dr. Stutzman | 944 |
| 12/7/16 | "wide-based and irregular gait … decreased sensation right lateral and anterior leg" | Dr. Malys | 824 |
| 12/20/16 | "Gait: normal, no assistive device." | Peter Letorte, M.D. | 835 |
| 7/11/18 | "decreased sensation to b/l/ lateral thighs … antalgic wide based gait" | Dr. Malys | 1291 |

## 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On December 7, 2016, primary care physician Lisa Malys, D.O., completed a Basic

Medical form indicating Plaintiff was 6'1" tall weighing 435 pounds. (Tr. 829). She listed

Plaintiff's medical conditions as degenerative disc disease of the lumbar spine (worsening),

worsening depression, worsening anxiety, worsening spinal stenosis, and worsening ADHD. *Id*.

Dr. Malys indicated additional studies or treatment were indicated, specifically identifying the

need for a neurosurgery, psychiatry, and pain management consult. *Id*. Dr. Malys checked boxes

indicating Plaintiff could stand/walk for two to three hours in thirty minute increments in an

eight-hour workday. (Tr. 830). She further opined Plaintiff could sit for six hours in thirty to

forty minute increments and lift/carry no more than fifteen pounds both frequently and occasionally. *Id*. She also checked boxes indicating Plaintiff was extremely limited in his ability to bend and markedly limited in his ability to push/pull. *Id*. Dr. Malys gave the following assessment for the limitations ascribed: "Examination in office, pt. stiff and unsteady after sitting for most of office visit, gait evaluated, bending limited on exam, lifting limitations per neurosurgery/pain management." *Id*.

On February 6, 2017, State Agency physician Esberdado Villanueva, M.D., considered Plaintiff's medical records. (Tr. 82-84). Dr. Villaneuva found Plaintiff could: lift/carry 20 pounds occasionally and ten pounds frequently; stand/walk 4 hours a day; sit 6 hours a day; limited ability push/pull with the lower extremities; "no more than occasional" pushing/pulling. (Tr. 82-83). Dr. Villanueva also found Plaintiff had postural limitations of never being able to climb ladders, and occasionally climbing ramps/stairs, balancing, kneeling, stooping, crouching, and crawling. (Tr. 83). Dr. Villanueva considered the April 2016 MRI in formulating his opinion (Tr. 84), as well as an examination showing normal gait, normal reflexes, 5/5 strength, and normal straight leg raise tests bilaterally. (Tr. 83).

On May 8, 2017, Dr. Malys completed a Medical Source Statement concerning Plaintiff's physical abilities and limitations. (Tr. 875-876). Therein, she opined Plaintiff was unable to work an 8-hour day due to worsening degeneration of the discs of the lumbar spine, and unsteady gait, crepitus of the knees, and numbness of the legs bilaterally. (Tr. 875). Dr. Malys opined that Plaintiff would miss three or more days of work per month due to "medical issues." *Id*. She also opined as follows: Plaintiff could stand/walk less than two to three hours in thirty to forty minute increments; Plaintiff could sit for less than four to six hours in thirty to forty minute increments;

Plaintiff could lift/carry "15 pounds at most occasionally;" and Plaintiff could rarely reach.[3] (Tr. 875-876). Despite checking boxes that Plaintiff had no difficulty fingering or handling, Dr. Malys limited Plaintiff to only occasional performance of these actions. (Tr. 876). She indicated she began treating Plaintiff on March 24, 2016, and last examined him on April 3, 2017. *Id*.

On July 14, 2017, State Agency physician Rannie Amiri, M.D., also completed a physical residual functional capacity (RFC) assessment. (Tr. 120-123). Dr. Amiri agreed with Dr. Villanueva's lifting and sitting restrictions, but reduced Plaintiff's ability to stand/walk to two hours in thirty minute increments during an eight-hour workday. (Tr. 121). Dr. Amiri also prohibited crawling, but assessed no limitations in Plaintiff's ability to push/pull. (Tr. 121-122).

### B.    Relevant Hearing Testimony[4]

During the January 17, 2019 hearing, the ALJ posed the following hypothetical to the VE:

> My first hypothetical, assume a hypothetical individual of the claimant's age and education, with the past jobs you described. Further assume this individual is limited to sedentary work with the following additional limitations -- excuse me -- occasional ramps and stairs. No ladders, ropes or scaffolds. Occasional balance, stoop, kneel, crouch. No crawling. No unprotected heights or moving mechanical parts. Limited to simple, routine tasks, simple work-related decisions, few changes in a routine work setting.

(Tr. 67-68). The VE responded that such an individual could not perform any of Plaintiff's past relevant work. (Tr. 68). However, the VE identified the following jobs that the hypothetical individual could perform: small parts inspector, Dictionary of Occupational Titles (DOT) 521.687-086, sedentary, SVP 2 (102,400 jobs nationally); order clerk, DOT 209.567-014, sedentary, SVP 2 (109,100 jobs nationally); and charge account clerk, DOT 205.367-010,

---

[3] Dr. Malys left the form blank with respect to the weight Plaintiff could carry frequently. (Tr. 876).

[4] As Plaintiff has not challenged the ALJ's credibility assessment, the court omits any summary of Plaintiff's testimony.

sedentary, SVP 2 (90,700 jobs nationally). (Tr. 68).

The VE also testified that employers will tolerate a worker being off task ten percent of the workday outside of regular breaks, and would tolerate one absence per month. (Tr. 68). If there was "no reading or writing whatsoever," the VE testified that the jobs of an order clerk and charge account clerk would be eliminated, but he would add the following jobs: final assembler, DOT 713.687-018, sedentary, SVP 2 (104,500 jobs nationally); and paper inserter, DOT 794.687-058, sedentary, SVP 1 (91,800 jobs nationally). (Tr. 69). After further discussion with Plaintiff's counsel, the VE testified that an individual who is unable to satisfy the lowest GED levels in the DOT and "cannot read at all" would be unemployable. (Tr. 69-70).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c)

and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.    Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.    The claimant has not engaged in substantial gainful activity since April 2, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: obesity; lumbar degenerative disc disease; depressive disorder; borderline intellectual functioning; ADHD; dermatitis (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: occasionally climb ramps and

stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch; never crawl; can never work at unprotected heights, never with moving mechanical parts; can perform simple, routine tasks; can perform simple work-related decisions; can tolerate few changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on ***, 1981 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 2, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-24).

## V.    Law and Analysis

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look

into any evidence in the record to determine if the ALJ's decision is supported by substantial

evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.

*Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ

failed to apply the correct legal standards or made findings of fact unsupported by substantial

evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned

even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.     Plaintiff's Assignments of Error

#### 1.     Weight Assigned to a Treating Source Opinion

In the first assignment of error, Plaintiff asserts the ALJ failed to provide good reasons

for the weight ascribed the opinions of his treating physician, Dr. Malys. (R. 13, PageID# 1462-

1468).

While the Social Security Administration abrogated the treating physician rule for disability

applications filed after March 27, 2017,[5] it is undisputed that Plaintiff's claim was filed on

January 3, 2017. (Tr. 235, 242). As such, the treating physician rule still applies. "Provided that

they are based on sufficient medical data, 'the medical opinions and diagnoses of treating

---

[5] "For claims filed after March 27, 2017, the 'treating physician rule' no longer applies."
*Herndon v. Comm'r of Soc. Sec.*, No. 20-6094, 2021 U.S. App. LEXIS 15178, at \*17 (6th Cir.
May 20, 2021).

physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

   It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb

to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed Dr. Malys's most recent opinion in the following brief discussion:

> In May 2017, Dr. Malys submitted a new statement regarding the claimant's ability to perform work-related activity. She stated that the claimant could work less than 8 hours and would be absent 3 or more days a month. He could stand/walk less than 30 minutes at a time for 2-3 hours in an 8-hour workday. He can sit for 30-40 minutes at a time, for less than 4-6 hours in an 8-hour workday. He can lift and carry 15 pounds maximum. He had no difficulty with handling objects, but could occasionally handle objects. He could not perform reaching at all due to reported numbness and decreased sensation of the extremities (7F). I afford little weight to Dr. Malys' opinions as the opinions are not consistent with the overall record, they go beyond the objective medical record. Dr. Malys considers greatly the claimant's subjective reports in formulating her opinion regarding his ability to work, rather than relying on medical examinations, including musculoskeletal and neurological evaluations.

(Tr. 22).

It is plain that the ALJ rejected material portions of Dr. Malys's opinion of May 8, 2017. The ALJ found Plaintiff could perform sedentary work, which requires no more than two hours

of standing/walking in a workday.

> 1. *Sedentary work*. The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, **a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met**. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, **periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday**, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

Social Security Ruling ("SSR") 83-10, 1983 WL 31251 at * 5 (1983) (emphasis added).

Therefore, Dr. Malys's opinion—that Plaintiff could stand/walk less than two to three hours in thirty to forty minute increments—is potentially inconsistent with the demand of sedentary work. Further, because Dr. Malys's opinion indicates that Plaintiff could sit for *less than* four to six hours, it is inconsistent with the ability to perform a full range of sedentary work that requires a full six-hours or more of sitting. (Tr. 875). The RFC also omits any monthly absences, and clearly rejected Dr. Malys's opinion that Plaintiff would miss three or more days of work per month (Tr. 875), a limitation that the VE testified would be work preclusive.

First, the Commissioner has not challenged Plaintiff's assertion that Dr. Malys was a treating physician at the time she rendered her opinions. The Commissioner offers essentially three justifications for rejecting the opinions of Dr. Malys: (1) the opinions are "not consistent" with and "go beyond" the objective medical record; (2) Dr. Malys opinions "greatly" relied on Plaintiff's subjective reports in formulating her opinion; and (3) Dr. Malys did not rely on

medical examinations, including musculoskeletal and neurological evaluations.

However, all three justifications offered by the ALJ for assigning little weight to Dr. Malys's opinions amount to little more than unexplained conclusions. Courts have routinely found that perfunctory assessments, such as the ones offered by the ALJ herein, do not constitute "good reasons" for rejecting a treating physician's opinion. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to satisfy the "good reasons" requirement where the ALJ merely stated, without explanation, that the evidence of record did not support the severity of said limitations). "Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 552 (6th Cir. 2010); *see also Patterson v. Astrue*, Case No. 5:09-cv-1566, 2010 WL 2232309 (N.D. Ohio June 2, 2010) (Vecchiarelli, M.J.) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance."); *Fuston v. Comm'r of Soc. Sec.*, Case No. 1:11-cv-224, 2012 WL 1413097 at *9 (S.D. Ohio Apr. 23, 2012) (finding the ALJ deprived the court of meaningful review where the ALJ discarded a treating physician's opinion "without identifying any contradictory evidence or explaining which findings were unsupported").

Moreover, the ALJ's conclusions—that the doctor's opinions are "not consistent" with and "go beyond" the objective medical record—are devoid of any explanation. The ALJ makes no attempt to identify which objective findings ostensibly support the rejection of Dr. Malys's opinion or, alternatively, explain what objective findings are absent from Plaintiff's treatment

records that render Dr. Malys's opinion as "going beyond" the objective medical record. (Tr. 22). The court also has no ability to review the ALJ's conclusion that Dr. Malys relied too "greatly" on Plaintiff's subjective reports when formulating her opinion, because the ALJ fails to give any explanation as to how he reached such a conclusion. The same is true of the ALJ's final proffered rationale—that Dr. Malys did not rely on medical examinations, including musculoskeletal and neurological evaluations. As noted above in the recitation of the evidence, many of the medical sources found issues with Plaintiff's gait and there were a number of positive straight leg raise tests. It is unclear whether the ALJ believes that Dr. Malys did not rely on these examination findings, or whether the ALJ concluded that the examination findings did not necessarily justify the limitations assessed. If the latter, the ALJ fails to explain how he arrived at the implicit conclusion that the medical examinations, including musculoskeletal and neurological evaluations, did not warrant the limitations assessed.

The Commissioner's brief attempts to overcome the shortcomings in the ALJ's decision by identifying portions of the record she believes support the ALJ's conclusion (R. 15, PageID# 1484, *citing* Tr. 1164), or by arguing that the State Agency physicians basically considered the records on behalf of the ALJ, and the ALJ reasonably relied on those opinions. (R. 14, PageID# 1481-1482).

With respect to the Commissioner's attempts to elaborate on the reasons actually proffered by the ALJ for rejecting Dr. Malys's opinion, courts have observed that, in the administrative agency context, "[c]ounsel's argument cannot be substituted for the reasons actually offered by the ALJ." *Williams v. Colvin*, No. 1:14-CV-02183, 2015 WL 5165458, at *6 (N.D. Ohio Sept. 2, 2015) (White, M.J.) (citations omitted); *see also Berryhill v. Shalala*, 4 F.3d 993 (6th Cir. 1993) ("[I]n large part, an agency's decision must be affirmed on the grounds noted in the decision.");

*Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). This court "may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Johnson*, 193 F. Supp.3d at 847 (N.D. Ohio 2016) (Polster, J.) (noting that "the Commissioner's post hoc rationalization for discounting Dr. Smarty's opinion is contrary to the law of the Sixth Circuit."); *see also Ammons v. Comm'r of Soc. Sec.*, 936 F. Supp. 2d 860, 865 (N.D. Ohio 2013) ("The Commissioner's *post hoc* arguments on judicial review are immaterial.") (Baughman, M.J.) Accordingly, the court finds the ALJ's explanation was lacking, and thereby failed to set forth "good reasons" for rejecting many of Dr. Malys's opinions. Although "good reasons" *may* exist in the record for ultimately rejecting Dr. Malys's opinions, the ALJ was required to articulate those reasons with sufficient clarity to allow this court to conduct a meaningful appellate review.

With respect to the Commissioner's argument that the State Agency physicians reviewed the same records as Dr. Malys and came to different conclusions, such an argument runs contrary to binding precedent in the Sixth Circuit. Because the opinions of treating medical source opinions are generally accorded greater weight than non-treating consultative opinions, the court finds that the contrary opinions of the State Agency physicians, on their own, would not provide a "good reason" for discounting Dr. Malys's opinion. Where the reason given for rejecting a treating source's opinion is solely that it conflicts with a non-treating source's opinion, the treating physician rule has been violated. *See, e.g., Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (finding that an ALJ may not base the rejection of a treating source's opinion upon its inconsistency with the opinions of non-examining State agency consultants, as that would turn the treating physician rule on its head); *see also Brewer v. Astrue*, No. 1:10-CV-01224, 2011 U.S. Dist. LEXIS 64262, 2011 WL 2461341, at *7 (N.D. Ohio June 17, 2011)

(White, M.J.).

The court finds the first assignment of error meritorious. A remand is necessary so that the Commissioner may reconsider the pertinent record and issue a new decision that clearly sets for the reasons for the weight assigned to the treating sources of record. Because a remand is necessary, the court foregoes addressing Plaintiff's remaining arguments in the interests of judicial economy.

**VI.    Conclusion**

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

IT IS SO ORDERED.

*s/ David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 23, 2021

17